UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Capsource Financial, Inc., Capsource Equipment Company, Inc. and Randolph M. Pentel,<br><br>  Plaintiffs,<br><br>vs.<br><br>Kenneth Moore and Prime Time Equipment, Inc., a California Corporation,<br><br>  Defendants. | Court File No.: _____<br><br>**COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

COMES NOW Plaintiffs Capsource Financial, Inc. and Randolph M. Pentel, for their Complaint against the above-named Defendants, state and allege as follows:

### PARTIES

1. Capsource Financial, Inc. ("Capsource") is a corporation incorporated under the laws of the State of Colorado with a principal place of doing business in St. Paul, Minnesota.

2. At all times material, Capsource sold dry van trailers and refrigerated trailers in the United States and Mexico. Capsource did business in California through a wholly owned subsidiary, Capsource Equipment Co., ("Equipment"), a duly organized and existing Nevada corporation.

3. Randolph M. Pentel is a natural person and citizen of the State of Minnesota and, at all times material, was the principal owner of Capsource, ("Pentel").

4. Until May 1, 2006, Prime Time Equipment Co. ("Prime Time"), a California Corporation, was lawfully engaged in the business of selling, financing and servicing of dry van and refrigerated trailers with a principal place of doing business at 15609 Valley Boulevard, Fontana, CA ("the Premises").

5. Kenneth Moore ("Moore") is a natural person and citizen of the State of California and, at all times material, was the President and principal shareholder of Prime Time.

## JURISDICTION

6. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1332(a)(1), as the action is between citizens of different states and the amount in controversy exceeds $75,000, and the parties have contractually agreed to Minnesota as the forum to resolve this action. The Court has pendent and ancillary jurisdiction over any claims deemed not subject to the forum selection agreement described further herein

## VENUE

7. Venue is appropriate pursuant to 28 U.S.C. § 1391(a)(2), as a substantial part of the events giving rise to the claim occurred in the District of Minnesota.

## FACTS

8. On May 1, 2006 Capsource and Defendants entered a series of agreements, including the purchase of substantially all of the assets of Prime Time. The Parties executed the following: 1) Asset Purchase Agreement (attached as Exhibit "A" to this Complaint); 2) Commercial Lease Agreement (attached as Exhibit "B" to this Complaint); 3) Consulting Agreement (attached as Exhibit "C" to this Complaint); 4) Hold Harmless and Indemnification Agreement (attached as Exhibit "D" to this Complaint); and 5) Non-Competition Agreement (attached as Exhibit "E" to this Complaint), (individually by title and collectively "Acquisition Documents"), all terms of which are incorporated herein by reference.

9. Under the Asset Purchase Agreement, Capsource paid total consideration of approximately $1,970,000, of which $1,014,300 was paid in cash at closing with the approximate

$955,000 balance consisting of Plaintiffs' assumption of certain liabilities of Defendant as set forth in paragraph 2.1 of the Asset Purchase Agreement.

10. As of May 1, 2006, the parties agreed, as set forth in the Acquisition Documents that Plaintiffs would own, operate and control the trailer business at the Premises.

11. Under the Acquisition Documents, Asset Purchase Agreement, Section 16.1 and Non-Competition Agreement, Section 3, Moore and Prime Time promised to refrain from competing with the new owners, refrain from soliciting or steering customers to other vendors, refrain from hiring or soliciting existing employees of the business and refrain from offering or selling competitive products for a period of five years, through April 30, 2011.

12. Under the Non-Competition Agreement, Capsource paid Moore $400,000 as consideration.

13. Specifically, under Section 3 of the Non-Competition Agreement, Moore and Prime Time promised as follows:

> In consideration of Buyer's purchase of the Assets including Seller's Business (and the goodwill associated therewith), the Sellers covenant to Buyer that, for a period of five (5) years from the Effective Date, neither it/he nor any Related Person shall, without the prior written consent of the Buyer (which consent may be given or withheld in the sole discretion of the Buyer), directly or indirectly (in any capacity, including as a General Partner, partner, member, lender, principal, director, officer, employee, consultant, contractor, or agent of any other person or entity): (a) own, manage, control, participate or engage in, or have any financial interest in any other person or entity that engages in the business or operations of . . . marketing, selling, leasing . . . or otherwise dealing with a Competing Product . . . (b) solicit, influence, or attempt to solicit or influence any customer, or any person or entity that is ,or was , a purchaser of goods or services from either Seller, Buyer or any Affiliate of Buyer to purchase a Competing Product from any person or entity other than the Buyer or an Affiliate of Buyer or (c) employ, or recruit or solicit for employment or otherwise induce to leave any person who is an employee of Buyer or any Affiliate of Buyer (or was an employee of the Buyer at anytime within the 6-month period preceding the subject act of solicitation, recruitment or employment).

14. For good and separate consideration, Moore and Prime Time promised not to compete with Capsource as more specifically set forth in the Section 11.6 of the Asset Purchase Agreement.

15. Capsource leased the land and building at the Premises, from which it was intended and agreed Plaintiffs would continue to operate the business under a separate Commercial Lease Agreement, from the Premises on Valley Boulevard.

16. The parties also entered a six-month Consulting Agreement, under which Moore would provide consulting services to the Plaintiffs commencing May 1, 2006.

17. The Consulting Agreement expired on November 1, 2006, and was not renewed.

18. Notwithstanding the expiration of the Consulting Agreement, Moore continued to regularly enter the Premises without the knowledge or approval of Capsource.

19. In direct violation of the Asset Purchase Agreement, Consulting Agreement and Non-Competition Agreement, after the expiration of the Consulting Agreement, Moore continued to regularly appear at the Premises, solicit employees, interfere with the business operations and unlawfully assert control of the business operations. Moore solicited, attempted to influence customers and "purchasers of goods" for his own benefit to the detriment of Plaintiffs and otherwise breached numerous provisions of the Acquisition Documents.

20. Moore has continued to fraudulently and unlawfully solicit, and influence customers and prospective purchasers of goods away from Plaintiffs for his own financial benefit and Plaintiffs' detriment, all in direct violation of the Acquisition Documents.

21. Capsource, unaware of the repeated flagrant breaches of contract and fraudulent and conspiratorial conduct by Moore, continued to make lease payments to Moore and paid all

other regular operating expenses, including employee wages many times from Plaintiff Randy Pentel's personal funds.

22. In Spring of 2009, Moore "evicted" Capsource from the Premises in furtherance of his operations and business activities, in direct violation of the Non-Competition Agreement and Purchase Agreement.

23. In August 2009, Plaintiffs contracted with Minneapolis-based Platinum Group ("Platinum") in an attempt to determine the cause of the underperformance of the business. Platinum arranged a meeting with Charlie Silvers, the manager of the business operation who, unbeknownst to Plaintiffs, Moore had previously solicited and persuaded to work in Moore's interest and contrary to Plaintiffs.

24. At the time the Platinum meeting was arranged, Silvers concealed numerous material facts, including that he was working in Moore's interests and that Moore had unlawfully been exercising dominion and control over Plaintiff's business, soliciting customers and diverting funds and proceeds lawfully from the property of Plaintiffs.

25. Platinum later reported that Moore had, in essence, wrested control of the business operation, fraudulently and unlawfully solicited and influenced employees and customers of Plaintiffs, and was surreptitiously operating a "competing entity" at the subject Premises. Platinum reported that Plaintiffs, in essence, no longer had a business at the Premises as Moore was operating his own trailer business out of the Premises.

26. Moore converted the existing inventory, good will, business name, and all other assets previously purchased by Capsource in May 2006, and continues to operate Prime Time unlawfully and in direct violation of the Acquisition Documents, despite the fact that he had received over $1.9 million in consideration.

27. Moore continues to unlawfully solicit new and used dry van trailers for sale business using a website previously sold to Capsource and also advertised in industry publications such as Truck Paper in violation of both the Asset Purchase Agreement and the Non-Competition Agreement.

28. Some of the illegal advertisements placed in the Truck Paper unlawfully use the Prime Time logo that was designed, purchased and paid for by Capsource after May 1, 2006 in both the Asset Purchase Agreement and the Non-Competition Agreement.

29. That Defendants have acted in deliberate disregard for the rights of Plaintiffs and have conspired with Silvers and, potentially, others to injure and damage Plaintiffs.

## COUNT I
## BREACH OF NON-COMPETITION AGREEMENT

30. Plaintiffs restate and reallege Paragraphs 1 through 29 as if fully set forth herein.

31. Pursuant to Paragraph 3 of the Non-Competition Agreement, Moore and Prime Time were prohibited from owning, managing, controlling, participating or engaging in, or having any financial interest in any entity dealing with "Competing Product".

32. Further, Defendants were prohibited from soliciting or attempting to solicit, influence any customers and/or purchasers of goods from any person or entity other than Plaintiff's or their affiliates.

33. That Defendants have breached the Non-Competition agreement and the Purchase Agreement in deliberate disregard of Plaintiffs' rights, thereby suspending the five-year period of non-competition set forth in the Non-Competition Agreement, which period continues as the breaching conditions have not been removed.

34. That due to Defendants' breach of the Non-Competition Agreement and Purchase Agreement, Plaintiffs have sustained significant and extensive damages, some of which are detailed above, some of which are irreparable in an amount to be determined at trial, but including the $400,000 paid as consideration, lost profits, lost sales and consequential damages in an amount to be determined at trial.

## COUNT II
## FRAUD

35. Plaintiffs restate and reallege Paragraphs 1 through 34 as if fully set forth herein.

36. Defendants fraudulently induced Plaintiffs to enter the Acquisition Documents. Defendants intentionally and fraudulently solicited customers and employees away from Plaintiffs, and diverted sales proceeds on inventory which rightfully were the property of Plaintiffs. Plaintiffs relied on the representations of Moore, including those set forth in the Acquisition Documents, and suffered financial detriment through the fraudulent concealment of Moore's unlawful takeover of the business operations.

37. Moore and Prime Time fraudulently converted funds due and owing to Plaintiffs, as well as assets of Plaintiffs purchased under the Purchase Agreement and other acquisition documents, to their own use. Plaintiffs are entitled to a return of the $1.9 million consideration, interest, consequential and other lost benefit of the bargain damages in an amount to be determined at trial.

## COUNT III
## BREACH OF ASSET PURCHASE AGREEMENT

38. Plaintiffs restate and reallege Paragraphs 1 through 37 as if fully set forth herein.

39. As part of the Asset Purchase Agreement, Defendants agreed not to compete with the plaintiff buyers in a "competing business" or selling "competing products" in a "covered area".

40. That Defendants have systematically and intentionally breached the subject provisions and have unlawfully solicited customers and otherwise compete with Plaintiffs. As a result of Defendants' unlawful conduct, Plaintiffs have been damaged in an amount to be determined at trial, and are entitled to disgorgement of all revenues and profits through the unlawful operation, lost profits and loss of goodwill and going concern value of the business.

## COUNT IV
## UNFAIR COMPETITION

41. Plaintiffs restate and reallege Paragraphs 1 through 40 as if fully set forth herein.

42. That Defendants have so fraudulently, deceptively and dishonestly conducted unlawful business operations so as to constitute common law and statutory unfair competition under the Minnesota Deceptive Trade Practices Act, Minn. Stat. 325D.44 *et. seq.* and California Business and Professional Code § 17203.

43. As a result of Defendants' unfair competition, Plaintiffs are entitled to an injunction against further activities at the Premises, and a damage award in an amount to be determined at trial, including, but not limited to, lost sales, disgorgement of profits, return of the $1.9 million consideration, loss of profits, loss of goodwill, going concern value of the business operation and interest.

## COUNT V
## UNJUST ENRICHMENT

44. Plaintiffs restate and reallege Paragraphs 1 through 43 as if fully set forth herein.

45. That Defendants have unjustly enriched themselves in excess of $1,970,000 at Plaintiffs' expense.

46. That Defendants continue to retain money and benefits which rightfully belong to Plaintiffs.

## COUNT VI
## INJUNCTIVE RELIEF

47. Plaintiffs restate and reallege Paragraphs 1 through 46 as if fully set forth herein.

48. Defendants' unfair competition, false and misleading statements, breach of contract and other activities constitute willful and knowing deceptive trade practices, in violation of Minn. Stat. § 325D.44, and California Business and Professional Code § 17203.

49. Further, Paragraph 6 of the Non-Competition Agreement states Plaintiffs have no adequate remedy at law and Plaintiffs are entitled to seek an injunction forbidding and prohibiting further breach of the agreement, an injunction prohibiting any further conduct of business operations at the Premises.

50. Defendants' actions have caused, and will continue to cause, irreparable injury and harm to Plaintiffs unless Defendants are enjoined from such actions.

51. That pursuant to Paragraph 6 of the Non-Competition Agreement, Defendants, and each of them, are liable to Plaintiffs for all costs, including legal fees, incurred to enforce the agreement.

52. Plaintiffs are also entitled to an award of attorney's fees and costs based on, among other things, Defendants' false and misleading statements and under Minn. Stat. § 325D.45, subd. 2.

## COUNT VII
## TORTIOUS INTERFERENCE WITH CONTRACT

53. Plaintiffs restate and reallege Paragraphs 1 through 52 as if fully set forth herein.

54. Plaintiffs had, at all times material, existing and numerous potential business and contractual relations with customers and purchasers of goods.

55. Defendants were aware of these existing and potential business contractual relations and intentionally interfered with them.

56. There is no justification for defense or interference with Plaintiffs' existing and potential business and contractual relationships.

57. Plaintiffs have suffered damages and injuries, and continue to be damaged and injured, as a direct result of Defendants' intentional interference with Plaintiffs' business and potential business in contractual relations, in an amount to be determined at trial.

## COUNT VIII
## TORTIOUS INTERFERENCE WITH PROSPECTIVE
## BUSINESS ADVANTAGE

58. Plaintiffs restate and reallege Paragraphs 1 through 57 as if fully set forth herein.

59. Plaintiffs had, at all times material, existing and numerous potential business and contractual relations with customers and purchasers of goods.

60. Defendants were aware of these existing and potential business contractual relations and intentionally interfered with them.

61. There is no justification for defense or interference with Plaintiffs' potential business and contractual relationships.

62. Plaintiffs have suffered damages and injuries, and continue to be damaged and injured, as a direct result of Defendants' intentional interference with Plaintiffs' business and potential business in contractual relations, in an amount to be determined at trial.

## COUNT IX
## CONVERSION

63. Plaintiffs restate and reallege Paragraphs 1 through 62 as if fully set forth herein.

64. Defendants have unlawfully converted money, goods and chattel lawfully owned by Plaintiffs and wrongfully detain such goods and chattel, including those assets described in Schedule A to the Bill of Sale.

65. Plaintiffs are entitled to an order permitting them to right and possession of all wrongfully converted property under the acquisition documents.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Capsource Financial, Inc., Capsource Equipment Company, and Randolph M. Pentel pray for judgment against Defendants Kenneth Moore and Prime Time Equipment, Inc., pray for judgment against Defendants as follows:

a) All consideration and monies paid to Plaintiffs as part of the Acquisition Documents;

b) Disgorgement of all unlawful profits;

c) Lost profits and expenses incurred by Plaintiffs;

d) All costs and attorneys fees;

e) Any other relief as is deemed just and equitable.

Dated this 26 day of September, 2011.

                                              JOHNSON & CONDON, P.A.

                                              */s/ Robert E. Kuderer/*

                                              Robert E. Kuderer (#207652)
                                              Attorneys for Plaintiffs
                                              7401 Metro Boulevard, Suite 600
                                              Minneapolis, MN 55439-3034
                                              (952) 831-6544

917501.docx