# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| CAPSOURCE FINANCIAL, INC; CAPSOURCE EQUIPMENT COMPANY, INC.; and RANDOLPH M. PENTEL, | Civil No. 11-2753 (JRT/TNL) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| KENNETH MOORE and PRIME TIME EQUIPMENT, INC, *a California Corporation*, | |
| Defendants. | |

Robert E. Kuderer and Jenna M. Powers, **JOHNSON & CONDON, PA**, 7401 Metro Boulevard, Suite 600, Minneapolis, MN 55439, for plaintiffs.

Todd S. Werner and Nadeem Schwen, **CARLSON CASPERS VANDENBURGH, LINDQUIST & SCHUMAN, P.A**, 225 South Sixth Street, Suite 4200, Minneapolis, MN 55402, for defendants.

This case arises from the allegations of Capsource Financial, Inc. that Kenneth Moore, the owner of a company whose assets Capsource purchased, interfered with Capsource's business operations and competed with Capsource in violation of multiple agreements. Capsource, its subsidiary Capsource Equipment Co., Inc. ("CEC"), and its principal owner, Randolph Pentel, (collectively "Plaintiffs") brought this action against Moore and his company, Prime Time Equipment, Inc. ("Prime Time").

Prime Time and Moore (collectively "Defendants") now seek dismissal of the case for lack of personal jurisdiction. In the alternative, Defendants seek transfer pursuant to

28 U.S.C § 1404(a).   Because the Court finds that Plaintiffs have asserted personal jurisdiction under a forum selection clause and that Defendants have failed to demonstrate that transfer is strongly favored, the Court will deny both motions. Defendants also move for a more definite statement under Fed. R. Civ. P. 12(e).  Because the Court finds that the pleading is not so vague or ambiguous that Defendants could not prepare a response, the Court will deny this motion.   Finally, Plaintiffs move to strike three declarations submitted in support of Defendants' reply brief.   The Court will deny Plaintiffs' motion.

## BACKGROUND

Capsource Financial, Inc. ("Capsource") is a Colorado corporation (Compl. ¶ 1, Sept. 27, 2011, Docket No. 1) that engages in the sale, leasing, and development of transportation equipment in the United States, Mexico, and Canada.  (Randolph M. Pentel Decl. ¶ 4, Dec. 9, 2011,  Docket No. 16.)  Although it had corporate offices in Colorado and Minnesota at times, since 2009 its primary corporate offices have been in Minnesota. (*Id.* ¶ 3.)   Randolph Pentel, a citizen of Minnesota, is the principal owner of Capsource. (Compl. ¶ 3.)  Capsource operates as a holding company, running its businesses through wholly owned subsidiaries.   (Pentel Decl. ¶ 4.)   In 2006, Capsource formed CEC, a Nevada corporation,[1] for the purpose of acquiring and taking over Prime Time.  (*Id.* ¶ 9.)

---

[1] Plaintiff asserts that CEC's principal place of business is Minnesota; Defendants assert that CEC's principal place of business is (or was) Colorado.  Because neither party asserts CEC's principal place of business was California, the Court finds that complete diversity of parties exists, and this Court has diversity jurisdiction under 28 U.S.C. § 1332.

Prime Time, a California corporation, was engaged in the business of selling, financing, and servicing trailers in Fontana, California until May 1, 2006.  (Compl. ¶ 4.)  On May 1, 2006, Capsource, through CEC, purchased substantially all of the assets of Prime Time.  (*Id.* ¶ 8; *see* Robert E. Kuderer Aff., Ex. B, Asset Purchase Agreement, Dec. 9, 2011, Docket No. 15.)  Kenneth Moore, a citizen of California, is the President and principal shareholder of Prime Time.  (Compl. ¶ 5; Decl. of Kenneth Moore ¶ 1, Nov. 18, 2011, Docket No. 12.)  Plaintiffs allege that after May 1, 2006, Moore continued to "unlawfully" operate Prime Time.  (Compl. ¶ 26.)

### A.    The Agreements

Capsource first contacted Moore about purchasing Prime Time in mid-2005.  (Moore Decl. ¶ 4.)  The parties subsequently exchanged e-mails and phone calls and had several in-person meetings.  (*Id.*)  Capsource's President, General Counsel, and Secretary, Steven E. Reichert, negotiated the purchases with Moore.  (Steven E. Reichert Decl. ¶¶ 5, 9, Dec. 9, 2011, Docket No. 17.)  On May 1, 2006, CEC, Prime Time, and Moore executed five agreements:

1. Asset Purchase Agreement
2. Commercial Lease Agreement[2]
3. Consulting Agreement[3]

---

[2] The Commercial Lease Agreement contained a statement that the Governing Law would be California.  (Compl., Ex. B § 29.)

[3] The Consulting Agreement contained a statement that the Governing Law would be Colorado.  (Compl., Ex. C § 7.7.)

    4.  Hold Harmless and Indemnification Agreement[4]

    5.  Non-Competition Agreement

(Compl. ¶ 8.)  Plaintiffs assert that Defendants breached the Non-Competition Agreement and the Asset Purchase Agreement.  (*Id.* ¶¶ 30-34, 38-40.)

Under the Asset Purchase Agreement, Prime Time transferred "all of the business, property and assets" it owned to CEC (Asset Purchase Agreement § 1.1), and Defendants paid total consideration of approximately $1,970,000.  (Compl. ¶ 9.)  The Asset Purchase Agreement contained the following forum selection clause:

> This Agreement shall be governed and construed and enforced in accordance with the laws of the State of Colorado excluding its conflict of law principles, and all actions interpreting, enforcing or effecting this Agreement shall be brought in the federal or state courts in Colorado and all parties submit to the jurisdiction of such courts.

(Asset Purchase Agreement § 13.7.)  Capsource asserts that it intended to insert a Minnesota forum selection clause and that the inclusion of Colorado was a drafting error.  (Reichert Decl. ¶ 11.)

The Non-Competition Agreement, executed by the same parties at the same time, had independent consideration of $400,000.  (Kuderer Aff., Ex. C, Non-Competition Agreement §4.)   The Non-Competition Agreement contained the following forum selection clause:

> The validity, construction and performance of this Agreement shall be governed by the laws of the State of Minnesota and any and every kind of

---

[4]  The Hold Harmless and Indemnification Agreement contained a statement that the Agreement "shall be interpreted under the law of the State of Colorado . . . ."  (Compl., Ex. D § 3.)

proceeding arising out of or in connection with this Agreement shall be brought in the appropriate courts of the State of Minnesota, each of the parties hereby consenting to exclusive jurisdiction of said courts for this purpose.

(*Id.* § 6(f).)

Both the Asset Purchase Agreement and the Non-Competition Agreement contained a non-competition clause in which Defendants agreed, among other things, not to own, manage, control, participate, or engage in a competing business within the United States, Canada and Mexico for five years.  (Asset Purchase Agreement § 11.6; Non-Competition Agreement § 3.)  These obligations expired on April 30, 2011.  (Compl. ¶ 11.)

## B.    Current State of the Companies

After CEC took over the operations of Prime Time, it ran the business from the same location in California, leasing the building from Moore.  (Moore Decl. ¶ 8; Compl. ¶ 15.)  In the spring of 2009, Plaintiffs assert that CEC was "evicted" from the California premises (Compl. ¶ 22); Moore asserts that he ceased receiving lease payments in the summer of 2009 (Moore Decl. ¶ 8).   Sometime in 2009, Moore "determined that Capsource was no longer operational, and effectively ceased to exist" and "restarted the operations of Prime Time" at its original location.  (*Id.* ¶ 9.)  Moore continues to operate Prime Time.  (Compl. ¶ 26.)

### C.    Kenneth Moore

Moore is currently eighty-eight years old.  (Moore Decl. ¶14.)  He suffered a stroke in August 2011, and he has heart problems.  (*Id.*)  His doctor has instructed him not to travel outside California.  (*Id.*)[5]  Defendants assert that Moore's absence from any ongoing litigation in Minnesota would prevent him from being able to defend himself against Plaintiffs' claims.  Moore is still the President and owner of Prime Time.  (*Id.* ¶ 1.)

### D.    Procedural Posture

In addition to breach of contract claims, Plaintiffs also assert claims for fraud (Compl. ¶¶ 35-37), unfair competition (*Id.* ¶¶ 41-43), unjust enrichment (*Id.* ¶¶ 44-46), tortious interference with contract (*Id.* ¶¶ 53-57), tortious interference with prospective business advantage (*Id.* ¶¶ 58-62), and conversion (*Id.* ¶¶ 63-65).  Plaintiffs seek an injunction (*Id.* ¶¶ 47-52) and monetary remedies (*see id.*).  Defendants move for a more definite statement for every count except Plaintiffs' breach of contract claims. (Docket No. 7.)  Defendants also move to dismiss for lack of personal jurisdiction, or, in the alternative, move to transfer venue.  (*Id.*)  Plaintiffs move to strike three declarations filed by Defendants in support of their reply brief.  (Docket No. 23.)  The Court will address each motion in turn.

---

[5] Defendants also submitted the Declaration of Dr. Tahir Majid, Moore's physician, to support this assertion.  (Docket No. 20.)  Plaintiffs have moved to strike this Declaration on the ground that it does not deal with new or unforeseen claims or defenses.  (Docket No. 23.)

## ANALYSIS

## I.    FORUM SELECTION CLAUSE & DEFENDANTS' MOTION TO DISMISS

Both the Asset Purchase Agreement and the Non-Competition Agreement contained forum selection clauses – the former specifying Colorado and the latter Minnesota.  The Court finds that enforcement of the forum selection clause in the Non-Competition Agreement is reasonable and provides this Court with personal jurisdiction over the Defendants.

### A.    Standard of Review

When a party challenges personal jurisdiction under Rule 12(b)(2), and where, as here, there has been no evidentiary hearing, the plaintiff has the burden of making a prima facie case showing personal jurisdiction over the defendant.  *Dakota Indus., Inc. v. Dakota Sportswear Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991).  The Court must view all facts in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor.  *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).

"A federal court may exercise jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution."  *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (internal quotation marks and citation omitted).  Minnesota's long-arm statute confers jurisdiction to the fullest constitutional extent.  *Coen v. Coen*, 509 F.3d 900, 905

(8th Cir. 2007).   Therefore, the Court's inquiry is limited to the question of whether an exercise of personal jurisdiction would comport with the Due Process Clause.

If the forum selection clause in the Agreement is valid,[6] this Court has jurisdiction over Defendants. *See Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001) ("Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause."). A forum selection clause is enforceable unless it is invalid or enforcement would be unreasonable and unjust. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).

For the reasons articulated below, the Court concludes that the forum selection clause in the Non-Competition Agreement is valid[7] and that enforcement would be reasonable because it would neither prevent Moore from being able to defend himself in the litigation nor require segregation of Plaintiffs' claims into multiple venues.

---

[6] The Court will use federal law to construe the validity of the forum selection clause. *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 538 (8th Cir. 2009).

[7] Defendants assert that "the competing forum selection clauses were not negotiated." (Defs.' Reply Brief at 4, Docket No. 19.)  Defendants provide no facts to support their assertion that the sale of Prime Time was anything other than "an arm's-length negotiation by experienced and sophisticated businessmen." *See M/S Bremen*, 407 U.S. at 12.  In the contested Second Moore Declaration, Moore asserts that he was not represented by counsel when he signed contracts provided by Capsource. (Second Decl. of Kenneth Moore ¶4, Dec. 22, 2011, Docket No. 21.)  Regardless, there is no evidence of any coercion, and Moore is a sophisticated business person who had access to counsel if he desired it.  Finally, that the clause was not actually negotiated would not render it per se unenforceable.  *See M.B. Restaurants, Inc. v. CKE Restaurants, Inc.*, 183 F.3d 750, 753 (8th Cir. 1999).  The Court concludes that the forum selection clause is valid.

### B.   Reasonableness

### 1.   Attendance by Moore

Courts have repeatedly suggested that a forum selection clause is not unjust where a party did not have the ability to travel to the forum.  *See, e.g.*, *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 790 (describing cases that are merely inconvenient versus "so gravely difficult and inconvenient" as to deprive a party of his day in court); *Kohanim v. Kerzner Int'l Ltd.*, No. 10-4792, 2011 WL 91004, at *3 (C.D. Cal. Jan. 5, 2011) (noting that plaintiff presented no evidence suggesting that to pursue her claims she would be required to be present in the forum).  The Court finds that Defendants' argument that Moore's inability to travel to Minnesota would render him unable to defend himself fails because he has presented no authority and articulated no rationale to show that a defendant must attend a civil trial in order to mount an effective defense.

### 2.   Segregation of Plaintiffs' Claims

Defendants also assert that application of both forum selection clauses would require segregation of Plaintiffs' claims into multiple venues.  "Federal courts construing conflicting forum selection clauses governing separate claims raised in a single action often decline to enforce both clauses out of concern for wasting judicial and party resources."  *Jones v. Custom Truck & Equip., LLC*, No. 10-611, 2011 WL 250997, at *4 (E.D. Va. Jan. 25, 2011).

Although enforcing "the forum selection clauses of **all** the agreements" would force the parties to litigate "in multiple forums, the exact same claims," the Court would

enforce the forum selection clause in only **one** agreement.  *See Pressdough of Bismarck,*

*LLC v. A&W Restaurants, Inc.*, 587 F. Supp. 2d 1079, 1086 (D.N.D. 2008) (emphasis

added).  Indeed, in *Pressdough*, the court "decline[d] to enforce each of the conflicting

forum selection clauses" and instead enforced a single forum selection clause, ultimately

transferring the case to the district indicated by that clause.  *Id.* at 1088.  Similarly, the

*Jones* court also enforced only one forum selection clause, and transferred all of the

related claims to the indicated district.  2011 WL 250997, at *5-6.

If Plaintiffs had previously filed some of their claims elsewhere, enforcing the

forum selection clause would result in an improper segregation of claims.  But because

Plaintiffs had not filed other claims elsewhere, the Court risks no such division here.[8]

Consequently, the Court will enforce the forum selection clause in the Non-Competition

Agreement.  The Court will deny Defendants' motion to dismiss for lack of personal

jurisdiction because it finds Defendants consented to personal jurisdiction by entering

into the Non-Competition Agreement**.**[9]  *See Dominium Austin Partners, L.L.C.*, 248 F.3d

at 726.

---

[8] Indeed, since Defendants suggest that, in the alternative, the entire litigation should be transferred to California, a venue not mentioned in either forum selection clause, the Court is skeptical of Defendants' concern about fragmented litigation.

[9] Defendants suggest that, even if the Court has jurisdiction over the Non-Competition Agreement claims, it does not have jurisdiction over the Asset Purchase Agreement claims or tort claims.  When a court has original jurisdiction over certain claims, it has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . . ."  28 U.S.C. § 1367(a). Because all of the claims are part of the same case or controversy, the Court will exercise its jurisdiction over all of the claims.

## II.     DEFENDANTS' MOTION TO TRANSFER VENUE

### A.     Standard of Review

In the alternative, Defendants move to transfer venue to California.  A three factor balancing test derived from the statutory language of 28 U.S.C. § 1404(a) directs the Court to consider "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice."  *Terra Int'l Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).  These factors are not exclusive, and a district court's decision on a motion to transfer "require[s] a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors."  *Id.*  "[T]he party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted."  *Id.* at 695.

### B.     Proper Venue in California and Effect of Forum Selection Clause

Under § 1404(a), a court must first determine whether the action "might have been brought" in the proposed transferee district.  Plaintiffs agree that absent a forum selection clause, Defendants' requested venue of California would be appropriate.  Because Plaintiffs brought this action where the forum selection clause provided it should be brought, Defendants face a particularly heavy burden in arguing that another venue is clearly more convenient.  *See Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789 ("Where, as here, the forum selection clause is the fruit of an arm's-length negotiation, the party challenging the clause bears an especially 'heavy burden of proof' to avoid its bargain.").

### C.      Convenience of Parties

In general, California would be more convenient for Defendants and Minnesota more convenient for Plaintiffs.  However, transfer under § 1404 is only appropriate if the proposed transferee forum is "clearly more convenient when considering the aggregate interests of all parties and non-party witnesses, and the interests of justice."  *ELA Medical, Inc. v. Arrhythmia Mgmt. Assocs., Inc.*, No. 06-3580, 2007 WL 892517, at *8 (D. Minn. Mar. 21, 2007).

Moore, a party and potential witness, asserts that he will be unable to travel to Minnesota.  Defendants make much of this potential absence, asserting that it will "deprive" Moore from "defending himself on equal footing."  Defendants have not demonstrated, however, that Moore's absence would prevent him from defending his claim; Moore is represented by counsel, and he will be able to testify by deposition if he is unable to attend in person.  Consequently, the Court finds that the convenience of the parties only slightly favors transfer to California.

### D.      Convenience of Non-Party Witnesses

Although Defendants have identified non-party witnesses in California, they have not demonstrated that these witnesses would be unwilling to attend a trial in Minnesota. Defendants also have not demonstrated that the live testimony of, for example, vendors of Capsource located in California is needed – indeed, Defendants have not even identified the vendors or stated whether they would be subject to the subpoena power of a California court.  Because Defendants identify more individual non-party witnesses than

Plaintiffs but do not clearly explain why a California venue is more convenient for their testimony, the Court finds that this factor only slightly favors transfer to California.

### E.      Interests of Justice

Courts typically consider the following factors in evaluating the interests of justice: "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra Int'l, Inc.*, 119 F.3d at 696.[10]   The parties agree that the comparative costs of litigation, the parties' ability to enforce a judgment, and the obstacles to a fair trial are neutral factors.

*Judicial Economy*.   As noted above, no other related claims have been filed elsewhere.  Consequently, the judicial economy factor is neutral.

*Plaintiff's Choice of Forum*.   "In general, federal courts give considerable deference to a plaintiff's choice of forum . . . ." *Terra Int'l, Inc.*, 119 F.3d at 695.  This factor thus strongly favors Plaintiff's selected forum, Minnesota.

*Local Law*.  Defendants assert that Plaintiffs' tort claims require the application of California law.  Even if this is so, the general view is "that courts can just as easily apply

---

[10] Defendants also suggest that the Court consider where the operative events occurred. Minnesota courts typically consider the location of the complained of conduct factor because of its impact on access to sources of proof and convenience.  *See, e.g.*, *Petters Co., Inc. v. Stayhealthy, Inc.*, No. 03-3210, 2004 WL 1630932, at *3 (D. Minn. July 7, 2004).  With the exception of the access to witnesses, addressed *supra*, the parties agree that Minnesota would be more convenient for Plaintiff and California for Defendants.  This factor is neutral.

the law of another state as easily as their own." *Clergy Fin., LLC v. Clergy Fin. Servs., Inc.*, 598 F. Supp. 2d 989, 995 (D. Minn.2009) (internal quotation marks omitted). "[W]here the legal questions involved are relatively simple . . . the familiarity-with-applicable-law factor is afforded little weight." *Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*, No. 09-720, 2009 WL 1684428, at *6 (D. Minn. June 16, 2009) (internal quotation marks omitted).  Nothing at this stage of the litigation suggests that the legal questions involved are unusually complex.  This factor is neutral.

Upon review of the 1404(a) factors, the convenience of the parties and witnesses slightly favors transfer; Plaintiffs' choice of forum, supported by a forum selection clause, strongly favors Minnesota; and most of the factors are neutral.  The Court, therefore, finds that Defendants did not meet their heavy burden of demonstrating that California is significantly more convenient than Minnesota, and it will deny the motion to change venue.

## III.    DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT

Finally, Defendants move for a more definite statement with respect to all of Plaintiffs' non-breach of contract claims.   Under Federal Rule of Civil Procedure Rule 12(e), a "party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response."   While Defendants point out a series of alleged inadequacies in Plaintiffs' pleadings that might be relevant to a motion to dismiss for failure to state a claim, they have not identified a single claim that is so vague that it would be impossible for Defendants to "frame a

response to the pleading," the only question on a Rule 12(e) motion. *Lyon Fin. Servs., Inc. v. MBS Mgmt. Servs., Inc.*, No. 06-4562, 2007 WL 2893612, at *9 (D. Minn. Sept. 27, 2007) (citing *Century '21' Shows v. Owens*, 400 F.2d 603, 607 (8th Cir. 1968)). Rule 12(e) motions are often used solely for the purpose of delay, *e.g.*, Am. Jur. Pleading § 417, and that appears to be the purpose for which Defendants brought the motion here. The Court will deny the motion for a more definite statement because it concludes that the pleadings are not so vague or ambiguous that the Defendants cannot reasonably prepare a response.

## IV.  PLAINTIFFS' MOTION TO STRIKE

As exhibits to their reply brief, Defendants submitted three additional declarations. (Tahir Majid Decl., Dec. 22, 2011, Docket No. 20; Kenneth Moore Second Decl., Dec. 22, 2011, Docket No. 21; Charlie Silvers Decl., Dec. 22, 2011, Docket No. 22.) Plaintiffs assert that these declarations were submitted in violation of Local Rule 7.1(b)[11] and should therefore be struck. *See also* Advisory Notes to Local Rule 7.1(b) (explaining that the Local Rule "neither permits nor prohibits the moving party from filing affidavits or other factual material" with a reply because such submissions are "appropriate only when necessary to address factual claims of the responding party that were not reasonably anticipated"). Although a reply brief is not the appropriate time to raise new

---

[11] "The moving party may submit a reply memorandum of law by filing and serving such memorandum at least 14 days prior to the hearing. A reply memorandum may not raise new grounds for relief or present matters that do not relate to the response." D. Minn. L.R. 7.1(b)(3).

facts or arguments, the Court's consideration of the affidavits does not change its analysis of the motion to dismiss. Accordingly, the Court will deny Plaintiffs' motion.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Defendants' Motion to Dismiss for Lack of Jurisdiction or To Transfer Pursuant to 28 U.S.C. § 1404(a) and Motion for a More Definite Statement [Docket No. 7] is **DENIED**.

2.     Plaintiffs' Motion to Strike Defendants' Reply Declarations Under Fed. R. Civ. P. 12(f) [Docket No. 23] is **DENIED.**


DATED:   June 27, 2012                                      ___s/ John R. Tunheim___
at Minneapolis, Minnesota.                                      JOHN R. TUNHEIM
                                                                                   United States District Judge